IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| JANE DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-3205 |
| | ) | |
| BLACKBURN COLLEGE, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

This matter comes before the Court on Plaintiff Jane Doe's Motion for Sanctions. See d/e 79 (the "Motion"). For the reasons set forth below, the Motion is DENIED.

## FACTS

This is an unusually old case for this Court's docket. In an effort to aid the case's progression, the Court held a status conference on January 6, 2011. During that conference, the parties advised the Court that they were trying to schedule a mental examination for the Plaintiff. A mental examination was appropriate under Federal Rule of Civil Procedure 35 since

1

Plaintiff's Complaint alleged harm to her "psyche". Due to the age of the case, the Court told the parties to expeditiously schedule the examination. Because so many delays in the case were caused by Plaintiff's failure to prosecute her claims, the Court advised her to be fully cooperative at the exam or risk dismissal of her entire case. <u>See</u> Minute Entry dated January 6, 2011.

Following the January 6, 2011, status conference, the parties agreed to hold Plaintiff's mental examination in St. Louis, Missouri on February 3 and 4, 2011. Defendant's expert, Dr. Duncan-Hively, was to examine Plaintiff at Dr. Duncan-Hively's office for an hour and a half session on each day.

As Plaintiff prepared to travel from her Florida residence to attend the examination, a severe winter storm was brewing. She was concerned about her safe travel. So, she contacted attorney and her attorney contacted Defense counsel to see about rescheduling the examination dates to sometime in March 2011. Defense counsel suggested that the examination dates be moved up to February 2-3 rather than moving them back to

March. For reasons unknown, Plaintiff's counsel objected. Unable to agree to rescheduled dates, the mental examinations were remained set for February 3-4.

Plaintiff had intended to drive to Staunton, Illinois, stay with her family, and commute to nearby St. Louis on February 3-4 for the examinations. However, her weather-related concerns led her to change her lodging plans. She chose to stay in a Missouri hotel to ensure she would be able to attend the examinations regardless of the weather. Plaintiff arrived at her hotel on January 31, 2011.

On February 3, 2011, Plaintiff and an individual who accompanied her drove from the hotel to the address defense counsel had provided for Dr. Duncan-Hively's office address. Plaintiff arrived at the address to discover that Dr. Duncan-Hively office was not there. She was advised of the correct address and arrived at Dr. Duncan-Hively's office for the examination.

After Plaintiff arrived, Dr. Duncan-Hively stated that she wanted to interview the individual who accompanied Plaintiff. The request was

3

refused. Thereafter, Dr. Duncan-Hively interviewed Plaintiff for an hour and a half. At the conclusion of that time period, Dr. Duncan-Hively asked Plaintiff to remain at the office to complete a written test (the Minnesota Multiphasic Personality Inventory ["MMPI"]). When Dr. Duncan-Hively made the request, she mistakenly believed that Plaintiff was supposed to be present for a 5-hour examination, not simply the hour and half examination agreed to by the attorneys. Dr. Duncan-Hively left the MMPI forms in a room with Plaintiff. When she returned, she found that Plaintiff had left the office and took the MMPI with her.

Plaintiff was upset so she contacted her attorney to tell her about the day's events. Plaintiff's counsel, who was on vacation, was not happy to hear Plaintiff's news. When Defense counsel contacted Plaintiff's counsel to discuss the day's events, Plaintiff's counsel erupted into a profanity-laced torrent. She repeatedly used the "F-word" and told opposing counsel that she should "beat the crap out of" him. After expressing herself fully, Plaintiff's counsel hung up on Defense counsel.

Defense counsel contacted Plaintiff's counsel sometime later on

4

February 3 to inquire whether Plaintiff would be appearing for the February 4 examination. Plaintiff's counsel told him that her client would not complete any written tests on during the February 4 examination. Defense counsel objected to the that restriction because it would interfere with Dr. Duncan-Hively's examination. Defense counsel asked Plaintiff's counsel to withdraw the restriction. He also advised her that he would cancel the February 4 examination session and seek court intervention if the restriction was not withdrawn.

Plaintiff's counsel never responded to defense counsel. Thus, on the evening of February 3, Defense counsel informed Plaintiff's counsel via voicemail and e-mail that he was cancelling the February 4 examination. Plaintiff's counsel never informed Plaintiff of the cancellation. Therefore, Plaintiff appeared at Dr. Duncan-Hively's office on February 4 at 8:40 a.m. for the examination. When no one appeared by 9:05 a.m., Plaintiff contacted her attorney and left the examination site.

On February 17, 2011, Plaintiff filed the instant sanctions Motion. In it, Plaintiff asked the Court to use its inherent power to award monetary

5

sanctions for "[P]laintiff's emotional distress attributable to defense counsel's conduct", reasonable travel, hotel and meal expenses, and attorney's fees. The Motion also asked the Court to bar opinions from Defendant's mental health expert and enter judgment for the Plaintiff. The Defendant timely responded. The Court now rules.

APPLICABLE LAW

The Federal Rules of Civil Procedure "are the product of a careful process of study and reflection" involving scholars, practitioners, Congress, and the Supreme Court, that seeks to strike a balance between judicial efficiency and litigants' rights. See Strandell v. Jackson County, Ill., 838 F.2d 884, 886-87 (7th Cir.1987); see also Roadway Express, Inc. v. Piper, 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980) ("Because inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion."). Thus, where the federal rules specifically address an area, it is inappropriate to rely on inherent power to go beyond the bounds the rules set. See Strandell, 838 F.2d at 886-88.

Beyond any rule-based justification for imposing sanctions, "the court's inherent authority to rectify abuses to the judicial process also authorizes sanctions for certain violations." See Dotson v. Bravo, 321 F.3d 663, 667 (7th Cir. 2003). In order to impose sanctions pursuant to its inherent power, a court must find that the party "'acted in bad faith, vexatiously, wantonly, or for oppressive reasons . . . .'" See Methode Elecs., Inc. v. Adam Techs., Inc., 371 F.3d 923, 928 (7th Cir. 2004) (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 45, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)); see also United States v. Johnson, 327 F.3d 554 (7th Cir. 2003) (disallowing sanction imposed under court's inherent power when there was no bad faith).

ANALYSIS

Since Plaintiff's Complaint (d/e 1) alleges that Defendant's actions caused her to suffer mental harm, Federal Rule of Civil Procedure 35 permits the Court to order her to submit to a mental examination. During a January 6, 2001, conference with the Court, Plaintiff was ordered to submit to a mental examination. Because the mental examination was a

7

court ordered portion of the discovery process, sanctions for abusive conduct could be appropriately sought under Federal Rule of Civil Procedure 37(b)(2)(A)(i)-(vii)(providing a non-exclusive list of discovery sanctions).

Defendant's conduct is an alleged violation of a Rule 35 order; thus, Rule 37 specifically addresses this discovery dispute. Plaintiff's failure to seek relief under Rule 37 is contrary to <u>Strandell</u>'s requirement that parties seek relief under the applicable procedural rules before seeking relief via a court's inherent power. <u>See</u> <u>Strandell</u>, 838 F.2d at 886-88. Since Rule 37 relief cannot be had without a certification of good faith (or attempted good faith conferral), and the instant Motion omits the required certification, Plaintiff is not entitled to relief. <u>See</u> Fed.R.Civ.P. 37(a)(1) (a motion for discovery related relief must contain a certification of good faith).

Even if that were not so and relief was appropriate under the Court's inherent powers, Plaintiff's requested relief would not be allowed under the facts of this case. The facts simply do not demonstrate the bad faith,

vexatiousness, or oppression necessary to trigger resort to the Court's inherent power. See Methode, 371 F.3d at 928; Chambers,

As for the first day of the examinations, the February 3 examination date was scheduled for everyone's mutual convenience and it had to be honored lest everyone could agree to a new date. Defense counsel tried to accommodate Plaintiff's weather concerns by moving the examination date up by a day. For reasons unknown, Plaintiff's counsel objected. Plaintiff's counsel suggested that the examination be moved to the next month, but Defense counsel refused. Given the age of this case and Judge McCuskey's statements during the January 6, 2011, conference that the examination proceed expeditiously, Defense counsel properly rejected Plaintiff's proposed March examination dates.

It is unfortunate that Defense counsel provided Plaintiff an incorrect address for Dr. Duncan-Hively (the Rule 35 examiner), but Defense counsel credibly explained that Dr. Duncan-Hively's move to a new address was the cause of Defense counsel's error. The error was understandable; it was not bad faith. In any event, the harm to Plaintiff was very minor since she

9

merely had to drive to the proper address.

Once the examination commenced on February 3, Plaintiff was required to reasonably cooperate with Dr. Duncan-Hively. That did not mean that Dr. Duncan-Hively could validly request that the individual who accompanied Plaintiff submit to questioning too.[1] Since the individual justly refused, Plaintiff suffered no harm which might entitle her to relief.

As for the MMPI which Plaintiff was asked to complete, the day's hour and half examination period had expired by the time Dr. Duncan-Hively asked Plaintiff to take the test. While Plaintiff was not required to stay for the MMPI, she had no right to remove the MMPI from Dr. Duncan-Hively's office. The test belonged to Dr. Duncan-Hively. Therefore, Plaintiff should have honored requests to return the test. Having failed to return the test voluntarily, she is ordered to send the test to Defense Counsel by March 17, 2011. Plaintiff is not required to complete any part of the test, but she is responsible for the cost of its return

---

[1] The pleadings do not state the identity of the individual who accompanied the Plaintiff. The individual does not, however, appear to be a lawyer. Since Plaintiff's counsel was on vacation during the examination dates, it seems Plaintiff attended the examinations without counsel.

(or the cost of the test itself if the MMPI cannot be returned).[2]

Regarding the February 4 examination, Plaintiff's difficulties were caused by her own lawyer. In counsel's February 3 communications with Defense counsel, Plaintiff's counsel stated that her client would not participate in any written testing. Since that interfered with Dr. Duncan-Hively's ability to examine Plaintiff, Defense counsel told Plaintiff's lawyer that he would cancel the February 4 examination unless the Plaintiff-imposed restriction was lifted. Plaintiff's counsel never responded to that advisement; thus, Defense counsel notified Plaintiff's counsel and counsel's office that the February 4 examination was cancelled. Plaintiff's Counsel had a duty to communicate that news to her client. Her failure to do so caused Plaintiff to unnecessarily appear for a the cancelled February 4 examination. As such, Plaintiff is not entitled to compensation for any expenses related to that day of examinations. Moreover, the Court will not disallow any of the defense's expert opinions as to Plaintiff's mental health;

---

[2]While the Court does not address whether Plaintiff is required to complete an MMPI, the issue can be addressed in relation to Defendant's pending Motion to Compel Rule 35 Examination (d/e 82). That matter is not yet ripe.

11

it will not award Plaintiff any attorney's fees; and the Court will not enter judgment for Plaintiff. None of the aforementioned relief would appropriate given the facts of this case. See Methode Elecs., Inc., 371 F.3d at 928.

As a final matter, the Court advises counsel and the parties alike that they should act civilly. Although tensions may run high during litigation, this case is not the place for foul language (i.e. repeated use of the "F-word") and talk of physical violence (i.e. threats to "beat the crap out of" opposing counsel). That type of conduct causes unnecessary friction and, as is evident here, court intervention. Should it occur again, the Court may use its inherent power or its non-exclusive Rule 37(b)(2) authority to assess fines. See Classic Amenities, Inc. v. Verbeke, 2001 WL 630709, at *2, (N.D.Ill. June 4, 2001) (assessing a $5,000 fine for a Rule 37 violation and collecting cases assessing court fines).

## CONCLUSION

THEREFORE, Plaintiff's Motion for Sanctions (d/e 79) is DENIED. Plaintiff is ORDERED to return the MMPI to Defense counsel by March

17, 2011. She shall bear all expenses related thereto. Plaintiff is responsible for the cost of the MMPI if the MMPI is not returned by March 17, 2011.

ENTERED this 10th day of March, 2011


                s/ Michael P. McCuskey
              MICHAEL P. McCUSKEY
              CHIEF U.S. DISTRICT JUDGE